IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

**BERKELEY COUNTY SCHOOL DISTRICT,**

        **Plaintiff,**

v.      C.A. NO. 2:18-cv-00151-DCN

**HUB INTERNATIONAL LIMITED,
HUB INTERNATIONAL MIDWEST
LIMITED, KNAUFF INSURANCE
AGENCY, INC., STANLEY J. POKORNEY,
SCOTT POKORNEY, and
BRANTLEY THOMAS,**

        **Defendants.**

**PLAINTIFF BERKELEY COUNTY SCHOOL DISTRICT'S MEMORANDUM IN RESPONSE TO HUB INTERNATIONAL LIMITED AND HUB INTERNATIONAL MIDWEST LIMITED'S NOTICE OF THE SUPREME COURT'S DECISION IN *HENRY SCHEIN, INC. v. ARCHER AND WHITE SALES, INC.*, No. 17-1272**

Plaintiff, Berkeley County School District (the "District"), by counsel, respectfully submits this Response to the Notice of the Supreme Court's Decision in *Henry Schein, Inc. v. Archer and White Sales, Inc.*, No. 17-1272 [ECF 60], filed herein by Defendants Hub International Limited and Hub International Midwest Limited (the "Hub Defendants").

**ARGUMENT**

In *Henry Schein, Inc. v. Archer & White Sales, Inc.*, No. 17-1272, 2019 U.S. LEXIS 566, at *11 (Jan. 8, 2019) ("*Schein*"), the Supreme Court held that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at *4. The Court thus rejected the "wholly groundless" exception to delegation provisions previously recognized by the Fifth, Sixth, and Federal Circuits, as well as the Fourth Circuit in *Simply Wireless, Inc. v. T-Mobile US,*

*Inc.*, 877 F.3d 522 (4th Cir. 2017). However, in its opinion in *Henry Schein*, the Court reaffirmed the fundamental principle that is at the core of the issues presented in this case - that under the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.,* it is the responsibility of the *court*, and not the arbitrator, to determine the threshold issue of whether a challenged arbitration clause is valid. *Id.* at *11 (noting that, "[t]o be sure, before referring a dispute to an arbitrator, the *court* determines whether a valid arbitration agreement exists") (citing 9 U.S.C. § 2) (emphasis added). It is only after the court decides that a valid arbitration agreement exists that it reaches the issue of whether the agreement delegates the issue of arbitrability to an arbitrator. *Id.* ("…if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue").

On January 9, 2019, the Hub Defendants filed a "Notice of the Supreme Court's Decision" in *Schein*, in which they assert that *Schein* supports their Motion to Enforce Arbitration Agreements in the instant case. The District agrees that the "wholly groundless" exception to delegation clauses recognized in *Simply Wireless* met its death in *Henry Schein*. However, under *Henry Schein* and the FAA, this Court decides the gateway question of validity. And because the arbitration agreements at issue here are invalid, the Court should deny the Hub Defendants' Motion to Enforce.[1]

---

[1] The *Henry Schein* Court's acknowledgement that the court decides the validity of arbitration agreements is in accord with Fourth Circuit authority. *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 699 (4th Cir. 2012) (holding that "the question of whether an enforceable arbitration agreement exists . . . is a matter of contract interpretation governed by state law"); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (holding that "even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate" and "whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation.").

Notably, the Court in *Schein* expressed no view as to whether the contract at issue in that case delegated the question of arbitrability to the arbitrator, as that question was not decided by the Court of Appeals. However, the Court offered its guidance to the Court of Appeals on remand that "[u]nder our cases, courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Id.* at *14 (quoting *First Options of Chi, Inc. v. Kaplan* 514 U.S. 938, 944 (1995)). Here, because no enforceable arbitration agreement exists, there is no "clear and unmistakable evidence" that the parties intended the issue of arbitrability to be decided by an arbitrator, notwithstanding the AAA delegation in the arbitration causes at issue.

### THE ARBITRATION AGREEMENTS AT ISSUE ARE INVALID AND UNENFORCEABLE.

The Hub Defendants, as the parties seeking to compel arbitration, have the burden of proving the existence of a valid arbitration agreement. *Fastener Corp. of Am. v. Asheboro Elastics Corp.*, 1:12-CV-1296, 2013 U.S. Dist. LEXIS 88834, *6, (M.D.N.C. 2013) ("The burden of proving an agreement to arbitrate rests upon the party seeking arbitration.") (citing *Silkworm Screen Printers, Inc. v. Abrams*, 978 F.2d 1256 (table), 1992 U.S. App. LEXIS 28843 (4th Cir. Nov. 4, 1992)). Here, the sum total of the Hub Defendants' proof that the District and Knauff entered into valid arbitration agreements is the filing of the Declaration of Julia B. Benfield ("Benfield"), a Hub employee, to which the Hub Defendants attached a series of documents located in Hub's files that they claim to be valid contracts between Knauff and the District. (Declaration of Julia B. Benfield, Exhibits B-G [ECF 23-8].) Each individual "contract" is, as a whole, invalid and unenforceable. Exhibits B and C were signed by District employees who had no authority to enter into the contracts. The District did not know the agreements at Exhibits D through G existed until the Hub Defendants' Motion was filed; none of these agreements contain

3

any signature by any person on behalf of the District and there is no indication that they were ever presented to the District.  Also, the agreements in question cover the provision of consultant services, which were required to be procured under the State and District Procurement Codes by the competitive bid process.  S.C. Code Regs. 19-445.2025; Berkeley County School District Procurement Code, Article 5, § 2030.1 and Definitions Appendix (defining "Services" to include "consultant services other than architectural, engineering, land surveying, construction management, and related services.") (attached as Exhibit A).  Furthermore, under its Procurement Code, the District is prohibited from entering into multi-year contracts unless "before the utilization" of such a contract it is "determined in writing"  that "estimated requirements cover the period of the contract and are reasonably firm and continuing and such a contract serves the best interests of the District by encouraging effective competition or otherwise promotes economies in …. procurement."  SC Code § 11-35-2030(2) (2005 through present); Berkeley County School District Procurement Code, Article 5, § 2030(2) (attached as Exhibit A.)  This requirement was not met.

Separate from the invalidity of the individual contracts as a whole, the arbitration agreements contained within them are, themselves, invalid and unenforceable, as discussed below.

### *Section 4230 Of The Berkeley County School District Procurement Code Renders The Arbitration Agreements Invalid And Unenforceable.*

As noted in the District's previous briefs, the District's Procurement Code prohibits employees of the District from entering into arbitration agreements with contractors.  In its Procurement Code, the Berkeley County School District specifically adopted S.C. Code §

4

11-35-4230 governing the authority to resolve contract and breach of contract controversies. (*See* Berkeley County School District Procurement Code, Article 17, Section 4230) (attached as Exhibit A). Section 4230 of the Procurement Code provides that the "exclusive means of resolving a controversy between the District and a contractor or subcontractor concerning a contract solicited and awarded pursuant to the provisions of this Code." (Exhibit A.)[2] As noted *supra*, the contracts at issue were not properly solicited or awarded because they covered consulting services which were required to be awarded by competitive bid, and they covered multi-year periods without meeting the requirement of a written determination that the estimated requirements were reasonably firm and continuing and that they served the best interests of the District. In other words, they were *required* to be solicited and awarded pursuant to the provisions of the Procurement Code, but they were not. Even if the contracts had been properly solicited and awarded, however, the arbitration agreements within them could not be enforced because neither the District nor any of its employees had authority to enter into them under Section 4230 of the Procurement Code.

This issue was addressed by the South Carolina Budget and Control Board in *State v. Accela, Inc.*, 2012 SC CPO LEXIS 3 (January 20, 2012). There, the Department of Labor, Licensing and Regulation entered into a contract with a contractor, Accela, Inc., for licensing management software, pursuant to the State Procurement Code. After the solicitation, the parties negotiated additional terms, which included an arbitration clause, including a AAA delegation. *Id.* at *4-5. A dispute arose, and Accela sought to enforce the arbitration clause. It argued that the FAA supersedes state statutes regarding resolution

---

[2] The language of Section 4230 of the Procurement Code mirrors that of S.C. Code § 11-35-4230. It merely replaces references to the State with references to the District.

of disputes. The Board rejected that argument on the basis that the contract at issue was a public contract, and the state did not have the authority to held that, under S.C. Code § 11-35-4230, the State did not have authority to override the state Constitution and legislature by entering into arbitration agreements with contractors. *Id.* at *7-8. *See Charleston Television, Inc. v. South Carolina Budget & Control Bd.*, 301 S.C. 468, 475, 392 S.E.2d 671, 675 (1990) (holding that a lease entered into by a governmental agency in contravention of the procurement code was null and void).

Notably, when Accela sought, a year before the Board's decision, to have this Court enter an injunction enforcing its arbitration provision, this Court denied Accela's petition. It held that Accela was unlikely to prevail on the merits because the "exclusive means" provision of S.C. Code Ann. §11-35-4230 overrides a contract provision to the extent that it requires that any suit on the contract be brought in another forum. *Accela, Inc. v. S.C. Dep't of Labor*, No. 3:11-cv-3326-CMC, 2011 U.S. Dist. LEXIS 148899, at *18 (D.S.C. Dec. 28, 2011) (Currie, J.) (citing *Unisys Corp. v. S.C. Budget & Control Bd. Div. of Gen. Servs.,* 346 S.C. 158, 170, 551 S.E.2d 263, 270 (2001) (finding that the "exclusive means" provision of § 11-35-4230 overrides a contract provision requiring disputes to be determined in a different forum).

State law requires school districts to adopt a procurement code that is "substantially similar" to the South Carolina Consolidated Procurement Code. *See* S.C. Code § 11-35-70; *Charleston Cty. Sch. Dist. v. Leatherman*, 295 S.C. 264, 267, 368 S.E.2d 76, 77 (Ct. App. 1988) (observing that state law specifically requires a school district's proposed procurement code to be "substantially similar" to the South Carolina Consolidated Procurement Code, which is a requirement that is not imposed universally). In accordance with Section 11-35-70, the District, in its Procurement Code, adopted the

6

same language employed by the State in Section 11-35-4230. Under the foregoing cases, interpreting the same language, no employee of the District had the authority to bind the District to an arbitration agreement. Accordingly, the arbitration agreements here cannot be enforced.[3]

*The Arbitration Agreements Are Invalid And Cannot Be Enforced Because They Were Procured Through Fraud And Were The Instruments Of A Criminal Enterprise.*

Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added). The Supreme Court has instructed that "generally applicable contract defenses, such as fraud, duress, or unconscionably, may be applied to invalidate arbitration agreements without contravening § 2 of the FAA." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

The "generally applicable" contract defense of fraud is applicable here, and it renders the arbitration clauses within the Knauff contracts invalid. Knauff/Hub's agent, Stanley Pokorney ("Pokorney"), and the District's Chief Financial Officer, Brantley Thomas ("Thomas"), conspired and engaged in a host of schemes to defraud the District and enrich themselves. Indeed, Thomas has been convicted of the crime of embezzling and converting to his own use $22,700.00 of public school funds by causing the District to overpay Knauff, and then having Knauff send a refund of the overpayment to Thomas at

---

[3]To the extent that Hub asserts that that Section 4230 did not apply to Knauff because the contracts were not solicited or awarded pursuant to the provisions of the Procurement Code, that argument must be rejected. Here, as a part of their conspiracy, Thomas and Knauff circumvented the solicitation and term requirements of State and District regulations and the Procurement Code. Hub cannot use that illegal action to enforce an arbitration clause that is prohibited by the contract resolution procedures in the Procurement Code.

7

his home address, after which the funds were converted to his personal use. (Amended Complaint, Exhibit B, p. 3.) This is but one of the many schemes hatched and executed by Knauff/Pokorney and Thomas, intended to enrich both Knauff/Pokorney and Thomas personally, at the expense of the District.

The Fifth Circuit's decision in *Janvey v. Alguire*, 847 F.3d 231, 249-251 (5th Cir. 2017) illustrates why the arbitration agreements at issue here should be declared invalid and unenforceable as instruments of Knauff/Pokorney and Thomas' fraud and criminal enterprise. In *Janvey*, the Fifth Circuit held that a Receiver for a bank that had been used to perpetuate a Ponzi scheme could not be compelled to arbitrate with the participants in the scheme. The majority opinion focused on the Receiver's representative role, which permitted him to avoid arbitration. As a result of that ruling, it was not necessary for the majority to reach the Receiver's argument that the arbitration agreements were instruments of fraud, because the privacy they provided facilitated the fraud and because the entities were coerced into accepting them as part of the Ponzi scheme. *Id.* at 244. In his concurring opinion, however, Judge Higginbotham did address the issue. He opined that because the arbitration agreements at issue were instruments of fraud and criminal enterprise, they could not be enforced. In addressing why arbitration would be attractive to those engaged in criminal activity, Judge Higginbotham noted as follows:

> One thus understands why the operator of a Ponzi scheme would be attracted to arbitration. A single lawsuit—even one unrelated to the scheme—may, by the discovery process of a state or federal court, expose the source of an "investor's return"—the fraud. Swindlers can use arbitration to mitigate discovery and cabin attending risk of exposing fraudulent activity while presenting arbitration, not as a tool of fraud, but as business as usual. In short, arbitration can assume a not insignificant role in protecting defendants' privacy, as we will see it did here.

*Id.* at 248 (Higginbotham, J., concurring).

Like the agreements in *Janvey*, the arbitration agreements at issue here should be declared invalid because their inclusion in the Knauff contracts was the result of a fraudulent criminal enterprise. In exchange for the multiple kickbacks and bribes he received from Knauff and Pokorney, Thomas regularly exposed the District to detrimental arrangements and agreements. In the case of the contracts at issue, it was the loss of the District's right to pursue any disputes against Knauff in court, which benefitted Knauff, Pokorney, and Thomas. The inclusion of arbitration clauses aided in Pokorney and Thomas' perpetration of the fraud on the District because it minimized the risk that their criminal activity would be exposed by the rigorous and liberal discovery available in court. By including arbitration clauses, Knauff, Pokorney, and Thomas could rest comfortably that their criminal enterprise would remain covert. The limited discovery in, and relative privacy of, arbitration proceedings would allow them to maintain the level of secrecy that was necessary to keep their criminal enterprise alive in the event a dispute arose.

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967), the Supreme Court held that while "claims of fraud in the inducement of the contract generally" must be arbitrated, claims of "fraud in the inducement of the arbitration clause itself" may be litigated. *Id.* at 404. In *Janvey*, Judge Higginbotham opined that the "latter category" described in *Prima Paint* "encompasses an arbitration agreement used as an instrument of a criminal enterprise." *Janvey*, 847 F.3d at 249. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 355 (2011) (holding that the FAA permits federal courts to adjudicate claims of "fraud in the inducement of the arbitration clause itself" because such claims "g[o] to the 'making' of the agreement to arbitrate"). Here, because the arbitration agreements were an instrument of, and perpetuated, a fraudulent criminal enterprise, this Court should find that they are invalid.

9

*The Arbitration Agreements Are Invalid And Unenforceable Because The Conduct Alleged Herein Was Illegal And Outrageous.*

In addition, as discussed in detail in the District's previous briefs, the Supreme Court of South Carolina recognizes an "outrageous tort" exception, pursuant to which arbitration agreements are not enforced where the conduct alleged is "illegal and outrageous" and "unforeseeable to a reasonable consumer in the context of normal business dealings." *Partain v. Upstate Auto. Grp.*, 386 S.C. 488, 493, 689 S.E.2d 602, 604-05 (2010), *reh'g denied*, 2010 S.C. LEXIS 79 (Mar. 17, 2010); *Aiken v. World Finance Corp.*, 373 S.C. 144, 644 S.E.2d 705 (2007), *cert. denied*, 552 U.S. 991 (2007). *See Parsons v. John Wieland Homes & Neighborhoods of the Carolinas, Inc.*, 418 S.C. 1, 13, 791 S.E.2d 128, 134 (2016) (stating that "the majority of this Court finds the outrageous torts exception to arbitration remains viable…"). Knauff and Thomas' criminal conspiracy was illegal and outrageous and could not have been foreseen by the District in the context of its normal business dealings.

## CONCLUSION

For these reasons, and for the reasons stated in the District's Memorandum in Opposition to the Hub Defendants' Motion to Enforce Arbitration and Supplemental Memorandum, the Court should deny the Hub Defendants' Motion to Enforce Arbitration Agreements. Although the Supreme Court rejected the "wholly groundless" exception in its recent decision in *Henry Schein*, this Court should deny Hub's Motion to Enforce because Hub has failed to prove the existence of a valid arbitration agreement between the parties.

        S<small>MYTH</small> W<small>HITLEY</small>, LLC


        <u>*s/Joshua S. Whitley*</u>
        Joshua S. Whitley, Esquire
        126 Seven Farms Drive
        First Citizens Plaza, Suite 150
        Charleston, South Carolina 29492
        843.606.5635 Office
        843.654.4095 Facsimile
        jwhitley@smythwhitley.com

        Jeffrey A. Breit, Esquire
        Virginia State Bar No.: 18876
        BREIT DRESCHER IMPREVENTO, P.C.
        600 22nd Street, Suite 402
        Virginia Beach, Virginia 23451
        757.670.3888 Office
        757.670.3939 Facsimile
        Jeffrey@breit.law
        *Pro Hac Vice*

        *Counsel for Berkeley County School District*

Charleston, South Carolina
January 23, 2019