IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

BERKELEY COUNTY SCHOOL DISTRICT, )
)
               Plaintiff, )
)   No. 2:18-cv-00151-DCN
       vs. )
)    **ORDER**
HUB INTERNATIONAL LIMITED, HUB )
INTERNATIONAL MIDWEST LIMITED, )
HUB INTERNATIONAL SOUTHEAST, )
KNAUFF INSURANCE AGENCY, INC., )
STANLEY J. POKORNEY, SCOTT )
POKORNEY, and BRANTLEY THOMAS, )
)
             Defendants. )
_____)

     This matter is before the court on plaintiff Berkeley County School District's (the

"District") motions to quash, ECF Nos. 189 and 195, and defendants HUB International

Limited and HUB International Midwest Limited's (collectively, "HUB") motion in

limine, ECF No. 189. For the reasons set forth below, the court denies the motions.

     This case arises out of the alleged embezzlement of millions of dollars from the

District. The District alleges that its former Chief Financial Officer Brantley Thomas

("Thomas") conspired with HUB and HUB's employees Stanley J. Pokorney

("Pokorney") and Scott Pokorney (together, "the Pokorneys") to defraud the District

through a concerted kickback scheme related to the purchasing of unnecessary insurance

policies. At the onset of this case, HUB filed a motion to compel arbitration based on the

arbitration clauses in six Brokerage Service Agreements ("Agreements") between the

District and Knauff Insurance ("Knauff") that span from 2002 to 2011.[1] On January 29,

_____
[1] Knauff Insurance was acquired by HUB in 2012.

1

2019, the court denied HUB's motion to compel, finding that the District did not agree to the Agreements and therefore did not agree to arbitrate. HUB appealed the court's order. The Fourth Circuit found that "there are multiple disputes of material fact as to 'the making of [any] arbitration agreement' between Berkeley Schools and the Appellants" and remanded the matter for a trial on that issue pursuant to Section 4 of the Federal Arbitration Act (the "Section 4 Trial"). Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 241 (4th Cir. 2019). The Section 4 Trial is set to commence on January 14, 2021.

The instant motions arise out of the District's recent deposition of Thomas. At the deposition, which took place on November 10, 2020, Thomas testified that the Pokorneys "knew" that Thomas's conduct was part of a scheme to defraud the District. ECF No. 190-1, Thomas Depo. 42:15–21; 52:4–16. After Thomas's deposition, HUB served two subpoenas seeking discovery related to prior comments Thomas made during his prosecution, which HUB theorizes will impeach his deposition testimony.

On December 8, 2020, HUB served a subpoena duces tecum on Matthew Hubbell, Thomas's criminal defense attorney and nonparty to this case. The same day, the District moved to quash the subpoena. ECF No. 189. On January 5, 2021, HUB served a second subpoena duces tecum on Peter McCoy, United States Attorney for the District of South Carolina, whose office brought in the criminal case against Thomas. The following day, the District sought to quash that subpoena as well. ECF No. 195. On January 8, 2021 and January 11, 2021, respectively, HUB responded to the motions. ECF Nos. 196 and 201. The District replied with respect to its first motion to quash on January 9, 2021. ECF No. 200. Additionally, on December 9, 2020, HUB filed a motion

2

in limine to exclude certain portions of Thomas's deposition testimony from the Section 4 Trial.  ECF No. 190.  On January 8, 2021, the District responded.  ECF No. 199.

### A.  Motions to Quash

HUB argues that the District is without standing to challenge the subpoenas because the subpoenas compel action by nonparties and seek materials in which the District has neither a personal right nor a claim of privilege.  The court agrees. "Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." HDSherer LLC v. Nat. Molecular Testing Corp., 292 F.R.D. 305, 307 (D.S.C. 2013) (quoting United States v. Idema, 118 Fed. App'x. 740, 744 (4th Cir. 2005) (unpublished opinion)).  The District does not claim a personal right to nor the protection of a privilege in the material sought, meaning that it does not have standing to bring the motions to quash.

The court understands the District's argument that the production of late-breaking evidence may present problems should the subpoenaed witnesses produce evidence prior to the start of the Section 4 trial.  However, that argument concerns the admissibility of evidence, not the validity of subpoenas.  The District's motion to quash asks the court to determine the propriety of the instant subpoenas, and, without standing to challenge the same, the District gives the court no grounds from which it might quash them.  Of course, the District may argue that any evidence produced in connection with the subpoenas is inadmissible as prejudicially untimely.  At this juncture, however, the admissibility of such evidence is not before the court, and the court therefore declines to consider the District's prejudice argument.  The motions to quash are denied.

**B. Motion in Limine**

HUB's motion in limine asks the court to exclude from the upcoming Section 4 Trial certain portions of Brantley's November 10th deposition. HUB explains Thomas's testimony concerning the Pokorneys' knowledge of Thomas's fraudulent scheme is inadmissible because "the Federal Rules of Evidence prohibit witnesses from speculating about what another person might have thought or believed." ECF No. 190 at 2. The court disagrees.

Despite attorneys' proclivity for objecting on the basis of "speculation", federal law includes no flat prohibition on "speculative" testimony. Instead, Fed. R. Evid. 701 provides that a lay witness's opinion must be "rationally based on the witness's perception." Based on Rule 701, many courts have concluded that a lay witness must present an "objective bas[i]s" for a subjective belief. United States v. Rea, 958 F.2d 1206, 1216 (2d Cir. 1992) ("When a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701, first because there is no way for the court to assess whether it is rationally based on the witness's perceptions, and second because the opinion does not help the jury but only tells it in conclusory fashion what it should find."). In other words, lay opinions supported by objective bases generally pass muster, where mere unsupported gut feelings do not.

In his deposition, Thomas testified to his opinion that the Pokorneys were aware of several aspects of Thomas's scheme to defraud the District. See, e.g., Thomas Depo. 21:11–13; 30:22–33:12; 42:15–21; 52:4–16. Thomas's testimony also provides several objective bases for that opinion, such that it is not fatally speculative. For example,

4

Thomas testified that HUB employees, including the Pokorneys, sent invoices to his home address, id. at 15:8–16:7, and conducted business through his personal email address, id. at 26:16–27:17, to conceal illegal activity.  More on the nose, Thomas testified on several occasions that the Pokorneys made suggestive comments indicating that they knew about Thomas's scheme.  See id. at 42:19–21 ("They knew what I was doing.  I, I -- they would make comments like, again, I don't have to worry.  We'll protect you.  Between us.  And that came from Stan."); see also id. at 52:7–11 ("Again, I'm going to go back to comments like you'll not have to worry we'll protect you.  It's between us.  No one will find out.  Is, that was a constant theme with [Stan Pokorney] and, and just I knew what he meant.").  Such evidence provides a sufficient objective basis for Thomas's lay opinion.

Of course, the speculative nature of Thomas's testimony may be an important aspect in determining the weight to accord the evidence.  However, the issue before the court is one of admissibility, not weight, and because the testimony is well grounded in other objective evidence, it is admissible.  Moreover, the dangers the federal rules of evidence guard against lose their bite in a nonjury trial, giving the court another reason to admit the testimony.  See Schultz v. Butcher, 24 F.3d 626, 632 (4th Cir. 1994) ("For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences.").  As such, the court denies HUB's motion in limine.

For the foregoing reasons the court **DENIES** the motion to quash and **DENIES** the motion in limine

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 12, 2021**
**Charleston, South Carolina**