# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| BERKELEY COUNTY SCHOOL DISTRICT, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> HUB INTERNATIONAL LIMITED, HUB ) <br> INTERNATIONAL MIDWEST LIMITED, ) <br> HUB INTERNATIONAL SOUTHEAST, ) <br> KNAUFF INSURANCE AGENCY, INC., ) <br> STANLEY J. POKORNEY, SCOTT ) <br> POKORNEY, and BRANTLEY THOMAS, ) <br> ) <br> Defendants. ) <br> _____) | No. 2:18-cv-00151-DCN <br><br> **ORDER** |

This matter is before the court on defendants HUB International Limited and HUB International Midwest Limited's (collectively, "HUB") motion to admit, ECF No. 205, and plaintiff Berkeley County School District's (the "District") motion for judicial notice, ECF No. 210. For the reasons set forth below, the court denies HUB's motion and grants in part and denies in part the District's motion.

## I.  BACKGROUND

This case arises out of the alleged embezzlement of millions of dollars from the District. The District alleges that its former Chief Financial Officer Brantley Thomas ("Thomas") conspired with HUB and HUB's employees Stanley J. Pokorney ("Pokorney") and Scott Pokorney (together, "the Pokorneys") to defraud the District through a concerted kickback scheme related to the purchasing of unnecessary insurance policies. In 2017, Thomas pled guilty to various crimes arising out of his role in the alleged scheme, including fraud and embezzlement, money laundering, and wire fraud.

1

At the onset of this case, HUB filed a motion to compel arbitration based on the arbitration clauses in six Brokerage Service Agreements ("Agreements") between the District and Knauff Insurance ("Knauff") that span from 2002 to 2011.[1]  On January 29, 2019, the court denied HUB's motion to compel, finding that the District did not agree to the Agreements and therefore did not agree to arbitrate.  HUB appealed the court's order.  The Fourth Circuit found that "there are multiple disputes of material fact as to 'the making of [any] arbitration agreement' between Berkeley Schools and the Appellants" and remanded the matter for a bench trial on that issue pursuant to Section 4 of the Federal Arbitration Act (the "Section 4 Trial").  Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 241 (4th Cir. 2019).

The court held the Section 4 Trial beginning on January 15, 2021.  The instant motions concern two evidentiary issues raised by the parties on the eve of and during trial.  On January 14, 2021, HUB filed a motion to admit statements Thomas made to federal investigators during his criminal investigation.  ECF No. 205.  The District responded in opposition on January 20, 2021.  ECF No. 209.  HUB replied on January 29, 2021.  ECF No. 216.  On January 20, 2021, the District also filed a motion requesting that the court take judicial notice of various court records relating to Thomas's convictions for crimes related to this action.  ECF No. 210.  HUB responded on January 29, 2021.  ECF No. 215.  The District opted not to reply.  As such, these motions are ripe for the court's review.

---

[1] Knauff Insurance was acquired by HUB in 2012.

## II.   DISCUSSION

### A.  Motion to Admit

On November 10, 2020, the District deposed Thomas.  At his deposition, Thomas testified that the Pokorneys "knew" that Thomas's conduct was part of a scheme to defraud the District.  ECF No. 190-1, Thomas Depo. 42:15–21; 52:4–16.  After Thomas's deposition, HUB served two subpoenas on Thomas's criminal attorney and the U.S. Attorney's Office, respectively, seeking discovery related to prior comments Thomas made to federal investigators during his prosecution.  The District filed motions to quash those subpoenas, ECF Nos. 189 and 195, which the court denied, finding, "[T]he District is without standing to challenge the subpoenas because the subpoenas compel action by nonparties and seek materials in which the District has neither a personal right nor a claim of privilege."  ECF No. 202 at 3.  HUB now seeks to admit statements Thomas made to investigators during his criminal prosecution, which are contained in an FD-302 Report ("302 Report") prepared by federal investigators.  According to HUB, those statements directly contradict Thomas's recent testimony indicating that the Pokorneys had knowledge of his embezzlement scheme.

Pursuant to Fed. R. Evid. 805, "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."  Therefore, "when a party seeks to introduce a document that contains hearsay within hearsay, any double hearsay statements are inadmissible unless a hearsay exception applies to each level of hearsay."  United States v. Habteyes, 356 F. Supp. 3d 573, 586 (E.D. Va. 2018).  HUB's proposed evidence contains two layers of hearsay—the 302 Report itself and Thomas's statements contained therein.  HUB contends that the

302 Report qualifies as both a business record and a public record under Fed. R. Evid. 803(6) and (8), exceptions to the general prohibition against hearsay. Further, HUB argues that Thomas's statements are admissible as impeachment evidence, meaning that they are not hearsay at all. Finding Thomas's statements inadmissible, the court denies the motion without reaching the issue of the 302 Report's admissibility.[2]

Fed. R. Evid. 607 authorizes a party to attack a witness's credibility, and Fed. R. Evid. 613 allows that party to do so by presenting a witness's prior inconsistent statement.[3] A party may introduce extrinsic evidence of an impeaching prior inconsistent statement, however, "only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." Fed. R. Evid. 613(b). Here, Thomas was not given an opportunity to explain or deny his prior statements, nor was the District given the opportunity to examine Thomas about them. Further, justice does not require that court to admit the statements. Thomas gave the testimony HUB now seeks to impeach at a deposition on November 10, 2020, during which HUB cross-examined Thomas. HUB did not seek

---

[2] In its reply, HUB confirmed that it seeks to admit only one portion of the 302 Report, which contains Thomas's statements to investigations. See ECF No. 216 at 1 n.1 ("HUB is seeking admission only of that portion of the 302 report setting forth the FBI's April 20, 2018 interview with Thomas that concerns the November 2007 refund payment and contains the quoted sentence concerning the Pokorneys' lack of knowledge of his wrongdoing related to it. HUB is not seeking admission of other reports."). As such, the court's finding that Thomas's statements are not admissible ends the inquiry.

[3] HUB does not seem to argue that Thomas's statements are admissible under the "prior inconsistent statement" exception to the hearsay rule. Fed. R. Evid. 801(d)(1) provides that a declarant's prior statement is "not hearsay" where the statement "was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." Thomas made the statements at issue here during the course of an investigation, not while under the penalty of perjury or during an official proceeding. As such, Thomas's prior statements do not fall within Fed. R. Evid. 801(d).

evidence of Thomas's prior statements to criminal investigators until it served subpoenas on the eve of trial, on December 8, 2020 and January 6, 2021. The District offered to continue the trial so that the parties could evaluate any documents responsive to HUB's subpoenas. HUB declined to request a continuance and instead sought to admit the spoils of its subpoenas on the eve of trial, thereby eliminating any opportunity for the District to evaluate the 302 Report. Further, HUB failed to name Thomas as a witness at trial or to otherwise confront Thomas with his inconsistent statements and afford him the opportunity to explain them. As such, Thomas's statements are inadmissible, and the court declines to consider them. HUB's motion is therefore denied.

### B. Motion for Judicial Notice

The District's motion asks the court to take judicial notice of certain documents related to Thomas's criminal convictions. Specifically, the District asks the court to take notice of the following:

> 1) South Carolina grand jury superseding indictment for embezzlement and forgery, filed October 17, 2017;
>
> 2) South Carolina grand jury indictment for breach of trust with fraudulent intent and money laundering, filed November 14, 2018;
>
> 3) South Carolina grand jury indictment for embezzlement, filed November 15, 2017;
>
> 4) Mr. Thomas's plea agreement with the United States, filed with this Court on December 7, 2017;
>
> 5) Federal felony information against Mr. Thomas filed December 7, 2017;
>
> 6) Transcript of a plea hearing held January 16, 2018, in which Mr. Thomas pleaded guilty before this Court to the charges contained in the information;
>
> 7) South Carolina grand jury indictment for embezzlement and forgery, filed June 28, 2018;

>8) South Carolina grand jury indictment for embezzlement and misconduct in office, filed November 14, 2018;
>
>9) Judgment of this Court convicting Mr. Thomas of the offenses to which he pleaded guilty and sentencing him to a term of incarceration, imposed on February 20, 2019; and
>
>10) Transcript of a plea hearing held April 12, 2019, in which Mr. Thomas pleaded guilty before the South Carolina Court of General Sessions to charges contained in the indictments[.]

ECF No. 210 at 1–2. The District asks the court to take notice of the documents themselves "under Rule 201 as conclusive, irrebuttable proof that Mr. Thomas was charged with, pleaded guilty to, and was convicted of the offenses described therein." Id. at 3. The District also contends that the documents are admissible "as evidence, theoretically rebuttable, of the truth of their contents under Rule 803(22)[.]" Id.

The distinction between admitting court records as authentic records and admitting them for the truth of their contents is thin and best explained through example. Take Thomas's state indictment. If the court takes judicial notice of the indictment as an authentic court record, such notice conclusively demonstrates that the state of South Carolina charged Thomas with the crimes contained therein. But the court's judicial notice of the indictment would have no bearing on whether the contents of the indictment are true, i.e., whether Thomas actually committed the acts charged. On the other hand, were the court to admit the indictment for its substantive truth, the court could consider the contents of the indictment as evidence that Thomas actually committed the acts with which the indictment charged him. HUB concedes that the court may take notice of the proposed exhibits as "authentic copies of court records[.]" ECF No. 215 at 2. Indeed, the law is clear that "[c]ourt records of prior convictions are 'not subject to reasonable dispute'" and are therefore noticeable under Fed. R. Evid. 201. United States v. Deas,

2009 WL 799653, at *2 (D.S.C. Mar. 23, 2009) (citing Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239–40 (4th Cir. 1989)).  Therefore, the court takes judicial notice of the proposed documents as authentic court records.  HUB disagrees with the District's second argument, however, and contends that the proposed records are not admissible to show the truth of their contents because "Rule 803(22) does not allow for the admission of Thomas's entire criminal docket carte blanche."  ECF No. 215 at 4.  The court agrees in part.

      Fed. R. Evid. 803(22) permits the court's admission of "[e]vidence of a final judgment of conviction" to the extent that "the evidence is admitted to prove any fact essential to the judgment."  The plain language of the rule clearly indicates that judgments of conviction, themselves, are excluded from the rule against hearsay and thus admissible.  However, the language is unclear as to whether the rule applies to all evidence of a conviction or merely to the judgment itself.  As an initial matter, the District points to no case law, and the court can find none, that might support its contention that indictments and informations fall within Rule 803(22).  Because indictments and informations do not constitute "final judgment[s] of conviction," fail to present "facts essential to the judgment," and, most fundamentally, are subsumed by the eventual judgment entered, the court finds that they do not fall within Rule 803(22).  Therefore, the court finds that the indictments and information the District seeks to admit, while admissible as authentic court records, are not admissible to prove the truth of their contents.

      Whether plea agreements and transcripts of plea hearings fall within Rule 803(22) is a more difficult question.  Case law concerning the contours of Rule 803(22)'s scope is

scant. One district court has recently reasoned, "The rule's title, 'Judgment of a Previous Conviction' and its explicit limitation of the hearsay exception to '[e]vidence of a final judgment of conviction,' suggest there is little room for a court to admit documents other than a Judgment in a Criminal Case." Evanston Ins. Co. v. Desert State Life Mgmt., 484 F. Supp. 3d 987, 1006 n.6 (D.N.M. 2020). Still, other courts have found that Rule 803(22) applies to plea agreements and transcripts of plea hearings underlying judgments, in addition to the judgments of conviction themselves. See U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc., 608 F.3d 871, 892 (D.C. Cir. 2010) (finding that a "guilty plea" and "Rule 11 memorandum" fell within Rule 803(22)). But in either case, courts limit application of Rule 803(22) to "facts essential to the judgment." See Evanston Ins., 484 F. Supp. 3d at 1006 n.6 (admitting two judgments of conviction and "contractual" portions of plea agreements but refusing to admit "fact" portions of plea agreements that were "non-essential"); U.S. ex rel. Miller, 608 F.3d at 892 (admitting a "guilty plea" and "Rule 11 memorandum" but redacting portions that contained "non-essential" facts). In other words, the distinction is largely academic because both roads lead to the same practical result. And the distinction is particularly semantical in this case, given that the dangers the federal rules of evidence guard against lose their bite in a nonjury trial. See Schultz v. Butcher, 24 F.3d 626, 632 (4th Cir. 1994) ("For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences."). As such, the court resolves to admit Thomas's guilty pleas and the transcripts of his plea hearings. However, in considering this evidence for the purposes of the arbitration issue, the court will only consider those portions of the plea agreements and transcripts that are "essential to the judgment." Fed. R. Evid. 803(22).

In sum, the court takes judicial notice of each of the documents the District proposes. Further, the court admits the following documents as substantive evidence to demonstrate the truth of their contents: the documents the District lists in it motion as Document Nos. 4, 6, 9 and 10, which the District has marked as Plaintiff's Exhibits 4, 7, 13, and 15. Further, the court declines to consider the substance of the following documents: Document Nos. 1, 2, 3, 5, 7, and 8, which the District has marked as Plaintiff's Exhibits 1, 2, 3, 6, 9, and 10.[4]

### III.   CONCLUSION

For the foregoing reasons the court **DENIES** the motion to admit and **GRANTS IN PART AND DENIES IN PART** the motion for judicial notice.

**AND IT IS SO ORDERED.**

           **DAVID C. NORTON**
           **UNITED STATES DISTRICT JUDGE**

**March 18, 2021**
**Charleston, South Carolina**

---

[4] HUB argues, and the District does not contest, that Thomas's judgment of conviction is admissible as impeachment evidence to discredit Thomas's testimony under Fed. R. Evid. 609(a). The court agrees.