# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| BERKELEY COUNTY SCHOOL DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>HUB INTERNATIONAL LIMITED, HUB INTERNATIONAL MIDWEST LIMITED, KNAUFF INSURANCE AGENCY, INC., and BRANTLEY THOMAS,<br><br>Defendants. | C/A No. 2:18-cv-00151-DCN<br><br><br>**PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR SUPPLEMENTAL BRIEFING REGARDING DEFENDANTS' SECOND MOTION TO COMPEL ARBITRATION** |

Plaintiff Berkeley County School District (the "District"), through undersigned counsel, hereby responds to the Court's request for supplemental briefing on two questions regarding Defendants HUB International Limited and HUB International Midwest Limited's (collectively with Defendant Knauff Insurance Agency, Inc., "HUB") second motion to compel arbitration.

**I.   Responses to the Court's Questions**

**A.   In what order must the Court reach gateway questions of arbitrability?**

A court considering a motion to compel arbitration under the Federal Arbitration Act (FAA) should first consider whether the FAA applies at all. Then it should consider whether the party moving for arbitration has met its burden to "demonstrate that a valid agreement to arbitrate exists, that [it is] entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 6 (1st Cir. 2014).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration

proceed in the manner provided for in such agreement." 9 U.S.C. § 4. If a court determines that "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue" the court shall "proceed summarily to the trial thereof" which may be by jury. *Accord Whiteside v. Teltech Corp.*, 940 F.2d 99,102 (4th Cir. 1991) (holding to compel arbitration under the FAA, a movant must prove "(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate and foreign commerce, and (4) the failure, neglect, or refusal of the defendant to arbitrate the dispute.").[1]

Considering each question in order, *first*, assuming the alleged agreement to arbitrate exists true, does the FAA apply to the alleged agreement to arbitrate? This question should be asked before any other question because if the FAA does not apply, the application of an arbitration agreement is determined by state laws which may impose different requirements than the FAA. The FAA applies to contracts "evidencing a transaction involving interstate commerce." 9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). The phrase "involving commerce" in the FAA "signals an intent to exercise Congress' commerce power to the full." *Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995)).

---

[1] The elements listed in *Whiteside* are within a discussion of the "separate federal cause of action for enforcement of agreements . . . in which the parties have agreed to arbitration" created by the FAA. 940 F.2d at 101. These are the facts that must be proven under the FAA, to a jury if demanded, to prevail in a motion to compel arbitration: The issues set forth in the statute at 9 U.S.C. § 4 plus the factual predicates necessary to apply that statute in the case before the court. *Whiteside* does not list every threshold question to be answered before reaching the merits of the claims. For example, questions of estoppel or the construction of a contract are not jury-triable issues.

***Second***, does a valid and enforceable arbitration agreement exist? This is the threshold question of formation, which is for a court to decide. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530, 202 L. Ed. 2d 480 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (holding that in considering "whether parties have agreed to submit a particular dispute to arbitration," it is "well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide" (internal quotation marks and brackets omitted)). This question should be decided before the Court reaches questions regarding who can invoke the arbitration agreement or is bound by it, or questions regarding the scope or enforceability of the arbitration agreement, because the existence of an agreement is a necessary antecedent to those questions. At this stage, the question is of formation only, not contract validity and enforceability. Agreements to arbitrate are severable from other agreements of the parties, so that courts may only refuse to enforce an arbitration agreement, if it exists, if the party opposing arbitration brings a discrete challenge to the arbitration agreement and not merely to the underlying contract that shows the arbitration agreement is invalid under generally applicable state contract law principles. *Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1622 (2018); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010).

Where there is an agreement to arbitrate, but it expired or terminated before the dispute arose, generally no agreement to arbitrate the dispute has been formed unless the dispute arises under the expired contract. *Nolde Bros. v. Loc. No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 252 (1977) (noting "parties' obligations under their arbitration clause survived contract termination when the dispute was over an obligation arguably created by the expired agreement" and therefore "the fact that the Union asserted its claim to severance pay

shortly after, rather than before, contract termination does not control the arbitrability of that claim") (applying National Labor Relations Act (NLRA) arbitration principles substantively identical to the FAA on a question of the arbitrability of a claim arising under a collective-bargaining agreement).  The Supreme Court later more fully explained:

> The object of an arbitration clause is to implement a contract, not to transcend it. *Nolde Brothers* does not announce a rule that postexpiration grievances concerning terms and conditions of employment remain arbitrable.  A rule of that sweep in fact would contradict the rationale of *Nolde Brothers*.  The Nolde Brothers presumption is limited to disputes arising under the contract.
>
> A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.
>
> Any other reading of *Nolde Brothers* seems to assume that postexpiration terms and conditions of employment which coincide with the contractual terms can be said to arise under an expired contract, merely because the contract would have applied to those matters had it not expired.  *But that interpretation fails to recognize that an expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied.*

*Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. NLRB.*, 501 U.S. 190, 205–06 (1991) (emphasis added) (applying arbitration principles under the NLRA that are substantively identical to the FAA).  Claims brought after the expiration of a contract "'can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.'"  *United Steel, Paper And Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO/CLC, Loc. No. 850L v. Cont'l Tire N. Am., Inc.*, 568 F.3d 158, 164 (4th Cir. 2009) (*quoting* Litton, 501 U.S. at 205–06).  It is possible in some narrow circumstances for South Carolina law to infer formation of an agreement to extend a contractual

4

provision beyond the expiration of the agreement containing it by application of a "significant relationship" test. For example, in *The Housing Authority of the City of Columbia v. Cornerstone Housing, LLC*, arbitration applied to a claim that arose *between* the operative periods of two contracts related to a single construction project and entered in successive years, which both had arbitration provisions. 588 S.E.2d 617, 622 (S.C. Ct. App. 2003).

*Third*, may the moving party invoke the arbitration clause? This question often regards waiver of arbitration by conduct like litigating a claim in court before asserting a right to arbitrate that claim. *E.g.*, *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1710–11, 1713 (2022). An assignment or agency relationship could raise this question as well.

*Fourth*, does the arbitration clause bind the non-moving party? Where the non-moving party is a signatory to the agreement, this generally is not an issue. This question often regards enforcement against non-signatories through concepts like direct benefits estoppel. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) ("A nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a 'direct benefit' from a contract containing an arbitration clause." (internal quotation marks omitted)). This was one reason why the 2006 and 2009 Brokerage Service Agreements (BSAs) with the Securing Assets For Education entity were not binding on the District. ECF No. 225 ¶¶ 150–53. An assignment or agency relationship could also raise this question.

*Fifth*, do the claims at issue fall within the scope of the arbitration clause? If there is an agreement to arbitrate that the movant may invoke that binds the non-movant, the Court must determine whether the claims at issue fall within the scope of the agreement unless there is a "broad delegation clause" delegating that question to the arbitrator. If so, the delegation must be enforced even if it is obvious that the movant's argument that the dispute falls within the scope is entirely

without merit. *Henry Schein,* 139 S. Ct. at 531. This is the "gateway" issue of arbitrability, the first threshold question for which the decision may be delegated to an arbitrator.[2] Courts must determine whether the FAA applies, whether an agreement to arbitrate was formed, whether the agreement binds the non-movant, and whether the movant may invoke it. After that, further questions about the scope and enforceability of the arbitration agreement may be delegated to an arbitrator.

**B.     When must the party moving to compel arbitration meet its burden to prove that the Federal Arbitration Act applies to the dispute?**

A motion to compel arbitration should be made before substantial litigation to avoid waiver of the provision. *See Morgan*, 142 S. Ct. at 1710–11. This generally means at the outset of litigation, since accepting the Court's jurisdiction to hear the dispute and proceeding with the litigation in a judicial forum is inconsistent with asserting authority to hear the dispute resides exclusively an arbitral forum. *See Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996).

The factual disputes material to determining the proper forum to hear the dispute should be determined at the outset of adjudication. Discovery and trial are the movant's opportunity to develop the factual predicate for a motion to compel arbitration. *See* 9 U.S.C. § 4. Where a trial is ordered under Section 4, the party moving for arbitration must prove "(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) *the relationship of the transaction, which is evidenced by the agreement, to interstate and foreign commerce*, and (4) the failure, neglect, or refusal of the defendant to arbitrate the dispute." *Whiteside*, 940 F.2d at 102 (emphasis added). Further, the involvement with interstate commerce must be proven *in fact*: "We accept the 'commerce in fact'

---

[2] This gateway question can be phrased in ways other than as a question of scope.

interpretation, reading the Act's language as insisting that the 'transaction' in fact 'involv[e]' interstate commerce" regardless of whether the parties "contemplate[d] an interstate commerce connection." *Allied-Bruce Terminix*, 513 U.S. at 281 (1995).

At trial, "the non-moving party's burden to offer evidence supporting its own case does not arise unless the moving party meets its initial burden of production." *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 177 (1st Cir. 2021) (internal quotation marks omitted). Thus, if the movant at trial fails to present evidence on a necessary element of the motion, like the applicability of the FAA to the alleged agreement at issue, the motion should be denied even if the non-movant is silent on the issue. That was why the Supreme Court held in *Bernhardt v. Polygraphic Company of America* that the contract there at issue did not involve interstate commerce and fell outside the FAA, even though the contract described conduct that could fall within the scope of the Commerce Clause. 350 U.S. 198, 200–01 (1956). The Court "said that the reason the Act did not apply to Bernhardt's contract was that there was '*no showing that petitioner* while performing his duties under the employment contract was working 'in' commerce, was producing goods for commerce, or *was engaging in activity that affected commerce*, within the meaning of our decisions.'" *Allied-Bruce Terminix*, 513 U.S. at 276–77 (quoting *Bernhardt*, 350 U.S. at 200–01) (emphasis in original).

II.  **Application to the Present Dispute**

A.  **HUB has failed to show the FAA applies in this case.**

The Court previously ruled, and the Fourth Circuit affirmed, that there is no applicable agreement to arbitrate after the 2003 BSA. *Berkeley Cnty. Sch. Dist. v. HUB Int'l Ltd.*, No. 21-1691, 2022 WL 17974626, at *3 (4th Cir. Dec. 28, 2022). The issue has been remanded to determine whether the 2002 or 2003 BSAs require arbitration of the claims asserted in the operative complaint. *Id.* To do so, it is HUB's burden to show the FAA applies. *Whiteside*, 940

F.2d at 102. HUB did not mention the applicability of the FAA or interstate commerce at all in its second motion to compel arbitration. ECF No. 258. HUB did not present evidence or argument on the issue at trial. ECF Nos. 218–22. HUB's only reference to the applicability of the FAA or interstate commerce was in its first motion to compel arbitration, which states *in toto*,

> C. The FAA's Interstate Commerce Requirement Is Satisfied
>
> The parties' dispute also easily satisfies the requirement that it "involv[e] commerce." *See* 9 U.S.C. § 2; *Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 87. The FAA "extend[s] . . . to the limits of Congress' Commerce Clause power." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995). Thus, "an arbitration clause merely 'affecting' interstate commerce would be covered by the statute." *THI of S.C. at Columbia, LLC v. Wiggins*, No. 3:11-888-CMC, 2011 WL 4089435, at *1 n.3 (D.S.C. Sept. 13, 2011). That is manifestly so here, where a North Carolina corporation entered into an agreement involving insurance brokerage services with a South Carolina school district. Indeed, the Complaint itself alleges that Knauff and the Hub Defendants "engaged in, and its activities affected, interstate commerce, including the provision of brokerage and consulting services across state lines." Compl. ¶ 163.

ECF No. 23 at 12. Other than attorney argument relying on adverbs, the only support offered to meet the requirement to show "affecting interstate commerce" *in fact* is the reference to a complaint allegation of conduct affecting interstate commerce. But that allegation is in support of the District's racketeering cause of action (now numbered ¶ 221 in the operative complaint). It has nothing to do with the 2002 or 2003 BSAs. The District only alleges racketeering activities occurring years after the termination of the 2003 BSA. *See* 2d Am. Compl. ¶ 175. The District never alleges performance the 2002 or 2003 BSA in fact fell within interstate commerce. Nothing in the District's RICO allegations says anything about the 2002 or 2003 BSAs, or, for that matter, about *anything* happening in 2002 or 2003. *See* 2d Am. Compl. ¶ 175. To the contrary, in opposition to the motion to compel arbitration, the District expressly denies that its claims against HUB are significantly related to the 2002 or 2003 BSAs. ECF No. 259 at 17, 19–21.

HUB thus failed to show the FAA applies in this case. The District was under no obligation to present evidence contesting the issue in the absence of a showing by HUB. *Air-Con*, 21 F.4th at 177. Even if the applicability of the FAA *seems* obvious, failure to present evidence *proving* it constitutes a waiver of the opportunity to make one's case, just as failure to timely make the motion at all would be a waiver of the right to invoke the arbitration provision. HUB has therefore waived the opportunity to make its case to compel arbitration. Thus, unless the Court is inclined to allow HUB another trial to try again, any attempt to cure the waiver by motion or attorney argument would be futile. At a minimum, HUB should be required to show good cause before being allowed to take a "mulligan" and try again. *Cf.* Fed. R. Civ. P. 33(b)(4) (providing that untimely objections to interrogatories are waived "unless the court, for good cause, excuses the failure"); Local Civ. Rule 16.02(D)(2) (untimely identified witnesses may be excluded "absent a showing of good cause").

**B.    Formation, not arbitrability, is the core issue in this case.**

The express termination of the 2003 BSA, agreed by all parties at the time, terminated all contractual rights and obligations in the contract including the arbitration provision. *See Litton*, 501 U.S. at 205–06. The arbitration provision therefore can continue to apply only to claims arising under the 2002 or 2003 BSAs, unless there is an agreement to continue operating under the terms of those agreements after their termination. *Id.* Aside from HUB's failure to show the FAA applies at all, the crux of the dispute before the Court is (1) whether the asserted claims in the operative complaint arise within the 2002 or 2003 BSAs, and, if not, (2) whether there was an agreement to extend those agreements to a time when the claims to arise.

The claims in the operative complaint do not arise before July 2004 (when the 2003 BSA expired). The operative complaint is clear that no damages are sought during that period. Damages have not been claimed for any period before July 2006. *See* 2d Am. Compl. ¶¶ 63–66. The

fraudulent conduct giving rise to the claims occurred well after July 2004. *Id.* ¶ 62 (alleging fraudulent conduct began *after* the RFP settlement in 2006). These allegations are well-supported by the trial record and the Court's undisputed findings of fact. The Court found, and the District alleges, that the 2002 and 2003 BSAs were commercially reasonable agreements which were performed appropriately. ECF No. 225 ¶¶ 35, 40; 2d Am. Compl. ¶ 48–49. They cannot possibly give rise to fraud or racketeering claims years later. After the 2003 BSA expired, the parties abandoned the fee-in-lieu-of-commission relationship defined in that agreement in favor of traditional commissions on premiums. ECF No. 259-1. And then they abandoned that relationship in an agreement to settle a dispute arising from the District's decision to cease using Knauff's services. 2d Am. Compl. ¶¶ 51–60. All that happened before Knauff engaged in the malfeasance giving rise to the District's claims. *Id.* ¶ 62. The District's claims therefore are not "significantly related" to the 2002 and 2003 BSAs.

An agreement to arbitrate claims arising under a one-year contract cannot be said to be an agreement to arbitrate all claims for all eternity. The District's position is that there is no agreement to arbitrate. HUB's position is that two unrelated agreements to arbitrate, the 2002 and 2003 BSAs, are eternal and never terminate so that any question about whether they apply to any claim whatsoever is a question of the scope of the arbitration provisions in those agreements must be decided by an arbitrator. HUB takes the position that the arbitration provisions in the 2002 and 2003 BSAs are eternal even though the parties expressly agreed they would terminate on specific dates, even though the parties undertook no behavior implying any agreement to extend or continue to operate under the 2002 or 2003 BSA, and even though the claims in the operative complaint cannot be "significantly related" to two one-year agreements that were commercially reasonable, were performed properly, and had expired years before any malfeasance by Knauff or HUB.

10

**III.     Conclusion**

For the foregoing reasons and for the reasons set forth in the District's other filings in this case, and because of the evidence presented at trial and the findings set forth in the Court's Findings of Fact following trial, the Court should deny HUB's motion to compel arbitration.

Respectfully submitted by:

s/Phillip D. Barber
Richard A. Harpootlian (Fed. ID No. 1730)
Phillip D. Barber (Fed. ID No. 12816)
Andrew R. Hand (Fed. ID No. 12176)
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street
Post Office Box 1090
Columbia, SC 29202
Telephone: (803) 252-4848
Facsimile: (803) 252-4810
rah@harpootlianlaw.com
pdb@harpootlianlaw.com
arh@harpootlianlaw.com

Joshua S. Whitley, Esquire
Federal Bar No.: 10829
SMYTH WHITLEY, LLC
126 Seven Farms Drive
First Citizens Plaza, Suite 260
Charleston, South Carolina 29492
843.606.5635 Office
843.654.4095 Facsimile
jwhitley@smythwhitley.com

Jeffrey A. Breit, Esq.
Virginia State Bar No.: 18876
BREIT CANTOR GRANA BUCKNER, PLLC
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
757.670.3888 Office
757.670.3939 Facsimile
Jeffrey@breitcantor.com
*Pro Hac Vice*

ATTORNEYS FOR PLAINTIFF

October 10, 2023
Columbia, South Carolina.