UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BERKELEY COUNTY SCHOOL DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>HUB INTERNATIONAL LIMITED, HUB INTERNATIONAL MIDWEST LIMITED, HUB INTERNATIONAL SOUTHEAST, KNAUFF INSURANCE AGENCY, INC., and BRANTLEY THOMAS,<br><br>Defendants. | C.A. No. 2:18-cv-00151-DCN |

**HUB'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS
MOTION TO ENFORCE ARBITRATION AGREEMENTS**

HUB hereby submits its supplemental brief in support of its Motion to Enforce Arbitration Agreements (Dkt. 258). This Court asked the parties to address two questions concerning the procedure for deciding a motion to compel arbitration under the Federal Arbitration Act. HUB first directly answers the Court's two questions. HUB then (I) provides the legal authority for those answers, and (II) explains how FAA procedure applies here given the record in this case.

**ANSWERS TO THE QUESTIONS PRESENTED BY THE COURT**

**First, in what order must the Court reach gateway questions of arbitrability?**

Where, as here, the arbitration agreement delegates questions of arbitrability to the arbitrator, the ***district court*** has authority to address ***only*** the following threshold questions under the FAA: whether there is a dispute between the parties; whether the agreement containing the arbitration clause is a valid contract; whether the transaction evidenced by the agreement relates to interstate commerce; and whether one party is refusing to arbitrate the dispute. The court may

1

address those factors in any order it chooses. If the court finds those factors are satisfied, it must order the case to arbitration. The final gateway question of whether the asserted claims fall within the scope of the arbitration agreement must then be decided by the ***arbitrator***.

**Second, when must the party moving to compel arbitration meet its burden to prove that the Federal Arbitration Act applies to the dispute?**

Where, as here, the arbitration agreement delegates questions of arbitrability to the arbitrator, it is the movant's burden to prove to the ***arbitrator*** that the asserted claims fall within the scope of the arbitration clauses; that occurs after the district court orders the case to arbitration. Before reaching that issue, it is the movant's burden under the FAA to establish in the ***district court***: that there is a dispute between the parties; that the agreement containing the arbitration clause is a valid agreement; that the transaction evidenced by the agreement relates to interstate commerce; and that one party is refusing to arbitrate the dispute. If the movant satisfies those elements, the court must order the case to arbitration for the arbitrator to decide the final gateway issue.

## ARGUMENT

**I.    THE LAW CLEARLY ALLOCATES RESPONSIBILITY FOR DECIDING GATEWAY ISSUES OF ARBITRABILITY BETWEEN THE DISTRICT COURT AND THE ARBITRATOR**

A party seeking to compel arbitration under the Federal Arbitration Act must establish four factors: "'(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002)). The second factor has two components: whether the contract containing the arbitration

2

clause is a "valid agreement," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019), and "whether [the] arbitration agreement applies to the particular dispute," *id.* at 527.

It is settled "'that parties may agree to have an arbitrator decide . . . gateway questions of arbitrability.'" *Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 n.9 (4th Cir. 2019) ("*Berkeley County I*") (quoting *Henry Schein*, 139 S. Ct. at 529). The procedure for resolving a motion to compel arbitration in such cases is clearly dictated by Supreme Court precedent. The district court retains responsibility to decide whether factors (1), (3), and (4) above are satisfied. *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019). But responsibility to decide the two components of the second threshold factor—whether there is "a written agreement that includes an arbitration provision which purports to cover the dispute," *Am. Gen. Life & Accident*, 429 F.3d at 87—is divided between the court and the arbitrator. "[B]efore referring a dispute to an arbitrator, the **court** determines" the first component—*i.e.*, "whether a valid arbitration agreement **exists**." *Henry Schein*, 139 S. Ct. at 530 (emphasis added). "But if a valid agreement exists," the court must then "refer[]" the "dispute to an arbitrator" to decide the second component. *Id.* The **arbitrator** must determine "whether [the] arbitration agreement **applies** to the particular dispute." *Id.* at 527 (emphasis added). "In those circumstances, a court possesses **no power** to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at 529 (emphasis added).

II. **THE ONLY THRESHOLD ISSUE REMAINING IN DISPUTE HERE—WHETHER THE DISTRICT'S CLAIMS FALL WITHIN THE SCOPE OF THE 2002 AND 2003 AGREEMENTS— MUST BE DECIDED BY THE ARBITRATOR**

In this case, HUB moves to compel arbitration under the 2002 and 2003 Brokerage Service Agreements between HUB and the District. *See* Dkt. 258 at 1-3. It is undisputed that those Agreements delegate questions of arbitrability to the arbitrator. The Fourth Circuit expressly held in the first appeal that, because those Agreements incorporate "the Commercial Rules of the

3

American Arbitration Association," they clearly "provide that an arbitrator has the power to rule on arbitrability issues." *Berkeley County I*, 944 F.3d at 234 n.9.  Thus, the procedures for deciding a motion to compel arbitration that the Supreme Court discussed in *New Prime* and *Henry Schein* govern here.

The first step is for this Court to address the threshold FAA factors that are within its authority to decide.  There never has been any dispute, however, that three of those factors are satisfied.  HUB's first motion to compel arbitration showed that a dispute exists between HUB and the District (factor 1); that the transactions relate to interstate commerce (factor 3); and that the District refuses to arbitrate the dispute (factor 4).  *See* Dkt. 23 at 5-6, 12-13.  The District did not deny any of that.  *See* Dkt. 33 at 17 (disputing only factor 2).  HUB's second motion, before the Court now, again explained that factors (1), (3), and (4) are satisfied.  *See* Dkt. 258 at 12.  And again, the District never disputed that they are satisfied.  *See* Dkt. 259 at 16-26.  It is thus undisputed that HUB has carried its burden on those three factors.  And it is too late now for the District to argue otherwise.  *See Mahdi v. Stirling*, 20 F.4th 846, 905 (4th Cir. 2021) ("'Failure to respond to an argument results in waiver.'").

That leaves factor (2): whether there is "a written agreement that includes an arbitration provision which purports to cover the dispute." *Am. Gen. Life & Accident*, 429 F.3d at 87.  Because the 2002 and 2003 Agreements delegate to the arbitrators "the power to rule on arbitrability issues," *Berkeley County I*, 944 F.3d at 234 n.9, the only remaining issue that ***this Court*** could ***potentially*** have authority to decide would be the ***first component*** of factor (2): whether the 2002 and 2003 Agreements are ***valid contracts***, *id.*; *see Henry Schein*, 139 S. Ct. at 530.  But that issue is no longer in dispute, either—the parties now agree that the 2002 and 2003 Agreements are valid written contracts.  HUB's arbitration motion showed that the Agreements are valid.  *See* Dkt. 258

4

at 12-15. And the District did not dispute the Agreements' validity in its response. To the contrary, the District expressly conceded that the 2002 and 2003 Brokerage Service Agreements "***are 'valid'***" and binding contracts, and thus that "the enforceability of the 2002 and 2003 BSAs" is no longer "at issue" in this case. Dkt. 259 at 16-17 (emphasis added); *see also id.* at 16 (acknowledging District's "constructive ratification" of 2002 and 2003 Agreements), 17 (representing that the District "does not argue . . . that the arbitration provisions in the 2002 or 2003 BSAs are inapplicable because the District's assent to them suffers a technical defect"). Again, it is too late now for the District to change course and argue otherwise. *See Mahdi*, 20 F.4th at 905.

Thus, the sole remaining gateway issue in dispute between the parties concerns the ***second component*** of factor (2): "whether [the] arbitration agreement applies to the particular dispute" in the District's Second Amended Complaint. *Henry Schein*, 139 S. Ct. at 527. The District agrees. The District explained that, at this point, it argues only that its claims should not be arbitrated because "the 2002 and 2003 Brokerage Service Agreements ***do not purport to cover***, and are not significantly related to, the claims in the second amended complaint." Dkt. 259 at 1 (emphasis added); *see id.* at 17 ("[t]he District merely argues those arbitration provisions are inapplicable to" the dispute in the SAC); *id.* at 18-19, 26 (arguing "significant relationship" test is not satisfied). Because the arbitration clause in the 2002 and 2003 Agreements delegated issues of arbitrability to the arbitrator, *Berkeley County I*, 944 F.3d at 234 n.9, however, any and all of the District's arguments about "whether [the] arbitration agreement applies to" the claims in the District's Second Amended Complaint" must be decided by the arbitrator. *Henry Schein*, 139 S. Ct. at 527.[1]

---

[1] For the avoidance of any doubt, the District's new argument that this case should not be sent to arbitration because the 2002 and 2003 Agreements "expired," Dkt. 259 at 25-26, does ***not*** implicate this Court's authority to decide whether the 2002 and 2003 Agreements are "valid agreement[s]," *Henry Schein*, 139 S. Ct. at 530. As just noted, the District concedes that the 2002

5

This Court "possesses no power to decide th[at] arbitrability issue," even if it "thinks that" HUB's "argument[s]" for why the arbitration agreements "appl[y]" to the District's claims are "wholly groundless." *Id.* at 529.[2]

As a result, it is now undisputed that all "gateway questions of arbitrability" under the FAA that are within this Court's authority to decide are satisfied. All that remains for this Court to do is to "refer[ ]" the "dispute to an arbitrator" to decide the final gateway question of arbitrability. *Henry Schein*, 139 S. Ct. at 530. Should the District choose to continue to fight over the arbitrability of its claims, it will be HUB's burden to prove to the arbitrator that "a significant relationship exists between the claim[s] and the" 2002 and 2003 Agreements. *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 94 (4th Cir. 1996).

---

and 2003 Agreements "are 'valid' " and binding contracts. Dkt. 259 at 16. As the District explains, its "expiration" argument concerns the separate question of whether this dispute "is so **significantly related** to the 2002 or 2003 BSA as to be subject to the terms of that now-expired agreement," *id.* at 26 (emphasis added); *see also* Dkt. 260 at 2-5, 11 (HUB Reply addressing District's "expiration" argument). That argument concerns "whether [the] arbitration agreement applies to the particular dispute" in the District's SAC, and so must be decided by the arbitrator. *Henry Schein*, 139 S. Ct. at 527.

To the extent the District also attempts to reprise its old argument that the 2006 settlement agreement between Knauff and the District concerning a 2005 Request for Proposal precludes HUB from enforcing the arbitration clauses in the 2002 and 2003 BSAs, *see* Dkt. 259 at 24, that is squarely foreclosed by the Fourth Circuit's holding that the "settlement agreement does not foreclose [HUB's] reliance on the arbitration clauses in the 2002 and 2003 BSAs," *Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, No. 21-1691, 2022 WL 17974626, at *3 (4th Cir. Dec. 28, 2022); *see* Dkt. 260 at 5-6 (HUB Reply).

[2] HUB's briefing has presented its substantive arguments for why the District's claims fall within the scope of the arbitration agreements out of both a desire to be transparent with this Court, and a need to ensure all potential arguments are preserved for appeal. *See* Dkt. 258 at 15-20; Dkt. 260 at 7-10. HUB has consistently made clear, however, that the arbitrator, not the Court, must decide that issue. *See* Dkt. 258 at 20; Dkt. 260 at 11.

## **CONCLUSION**

HUB respectfully requests an order compelling arbitration and staying this case.

Dated:  October 10, 2023

Respectfully submitted,

*/s/* John A. Massalon

Thomas J. Wiegand, admitted *pro hac vice*
MOLOLAMKEN LLP
300 N. LaSalle St.
Chicago, IL  60654
(312) 450-6700 (telephone)
(312) 450-6701 (facsimile)
twiegand@mololamken.com

Michael G. Pattillo, Jr., admitted *pro hac vice*
MOLOLAMKEN LLP
600 New Hampshire Ave., N.W.
Washington, D.C.  20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
mpattillo@mololamken.com

John A. Massalon (#5227)
Christy F. Allen (#07549)
WILLS MASSALON & ALLEN LLC
PO Box 859
Charleston, SC  29402
(843) 727-1144 (telephone)
(843) 727-7696 (facsimile)
jmassalon@wmalawfirm.net
callen@wmalawfirm.net

*Attorneys for Defendants HUB International Limited and*
*HUB International Midwest Limited*